UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RONDA F. BURCH,
<u>Plaintiff-Appellant,</u>

v.

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
<u>Defendant-Appellee.</u>

No. 00-1402

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Margaret B. Seymour, District Judge.
(CA-98-2891-2-24AJ)

Argued: April 6, 2001

Decided: May 29, 2001

Before WILLIAMS, TRAXLER, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Max Leiter, LEITER & SNOOK, P.A., Myrtle
Beach, South Carolina, for Appellant. Yvette G. Keesee, Assistant
Regional Counsel, Office of the General Counsel, SOCIAL SECUR-
ITY ADMINISTRATION, Denver, Colorado, for Appellee. **ON
BRIEF:** Frank W. Hunger, Assistant Attorney General, J. Rene
Josey, United States Attorney, James D. McCoy, III, Assistant United
States Attorney, Deana R. Ertl-Lombardi, Chief Counsel,

Region VIII, Office of the General Counsel, SOCIAL SECURITY
ADMINISTRATION, Denver, Colorado, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Ronda F. Burch appeals the district court's order affirming the
Commissioner of Social Security's ("the Commissioner") denial of
Burch's claim for disability insurance benefits. We affirm.

I.

On September 10, 1992, Burch was admitted to Coastal Carolina
Hospital "for evaluation and treatment of anxiety, marital discord
with resentment toward [her] husband and decreased ability to sleep
and concentrate." A.R. 112. Burch was treated by Dr. Dawn Murphy
and diagnosed with "[m]ajor depression, recurrent." A.R. 111. After
five days of treatment, Burch was discharged and prescribed Prozac
and Trazodone. Burch remained under Dr. Murphy's care on an out-
patient basis from September 1992 through February 1998.

Approximately one year prior to her admission to Coastal Carolina
Hospital, Burch quit her job as an insurance secretary because of
depression. Burch attempted to return to a similar position in Septem-
ber 1994 but worked for only three months. She stated she left this
position because she "almost had a nervous breakdown." A.R. 304.
On April 11, 1995, Burch filed an application for disability insurance
benefits, alleging that her disabling condition, i.e., depression, began
in January 1992. Her application was denied at both the initial and
reconsideration stages. At Burch's request, a hearing was held before
an Administrative Law Judge ("ALJ") on May 3, 1996. After examin-
ing the relevant records and hearing from Burch and Dr. Murphy, the

2

ALJ held that Burch was not entitled to disability benefits under the Social Security Act. The Appeals Council denied Burch's request for a review of the ALJ's decision, thus making that the ALJ's ruling final for purposes of judicial review. See 20 C.F.R. § 404.981 (2000); see also Sims v. Apfel, 120 S. Ct. 2080, 2083 (2000). Burch then filed suit in the district court pursuant to 42 U.S.C.A.§ 405(g) (West Supp. 2000), challenging the denial of benefits. In an order dated January 31, 2000, the district court found that the denial of benefits was supported by substantial evidence and affirmed. Burch now appeals to this court.

II.

We review the ALJ's denial of disability insurance benefits to determine whether the decision is supported by substantial evidence. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." NLRB v. Peninsula Gen. Hosp. Med. Ctr., 36 F.3d 1262, 1269 (4th Cir. 1994) (internal quotation marks omitted). Though substantial evidence must certainly amount to more than a scintilla, it may also be less than a preponderance. See AT&T Wireless PCS, Inc. v. City Council, 155 F.3d 423, 430 (4th Cir. 1998). In assessing whether the findings are supported by substantial evidence, we must ascertain whether the ALJ has examined all relevant evidence and offered a sufficient "rationale in crediting certain evidence." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The legal conclusions of the ALJ are reviewed"de novo to determine whether they are rational and consistent with applicable law." Id.

A claimant seeking disability benefits must establish the existence of a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. See 42 U.S.C.A. § 423(d)(1)(A) (West Supp. 2000). The regulations define substantial gainful activity as work activity involving significant physical or mental abilities for pay or profit. See 20 C.F.R. § 404.1572(a), (b) (2000). In evaluating whether a claimant is entitled to disability insurance benefits, an ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520 (2000). An ALJ must

3

consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

The ALJ found that Burch was not working and that Burch suffered from "situational depression related to her marital status and other family relationships." A.R. 25. However, the ALJ found that Burch's impairment did not meet or equal the requirements of a listed impairment and that Burch could return to her past work as an insurance secretary. The parties agree that the relevant listed impairment is found in 20 C.F.R. Pt. 404, Subpart P, App. 1,§ 12.04. According to this regulation, a claimant suffering from an affective disorder must first prove depressive syndrome characterized by four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f.  Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i.  Hallucinations, delusions or paranoid thinking.

4

20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.04(A). If the claimant can establish four of the nine symptoms, the claimant must then establish that the symptoms result in two of the following:

       1. Marked restriction of activities of daily living; or

       2. Marked difficulties in maintaining social functioning; or

       3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

       4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.04(B).

At the hearing, Burch testified that her activities were severely limited. She stated that she is able to drive an automobile, but on occasion has to pull to the side of the road to "get myself back together and go do what I was going to do." A.R. 306. Burch testified that she had never been sociable and no longer attends church regularly because she "just can't face it." A.R. 307. When she does attend she sits on the balcony to avoid contact with others. Burch is able to sleep only four hours per night and rises when she "can get it together enough to get up and maybe get a cup of coffee." A.R. 310. Burch testified that she spends most of her day resting due to fatigue, but that when she can summon her energy she tries to take care of the household chores. Other than performing the occasional chore, Burch testified that during the day she talks with her sister on the phone, follows soap operas and game shows on televison, and keeps watch over her grandchild from time to time. Burch also keeps track of bills and writes checks, but testified that her daughter usually reviews the records to make sure Burch made no errors.

Dr. Murphy took the stand at the conclusion of Burch's testimony. Dr. Murphy testified that Burch suffers from major depression and

that "[h]er condition is significantly worse today than it was" when she was first admitted to the hospital. A.R. 352. In Dr. Murphy's view, Burch is unable to work due to irritability, paranoia, trouble concentrating, and lack of long-term memory. Dr. Murphy also testified that she was considering electroconvulsive therapy, but was hesitant to begin therapy because of a mild stroke Burch had suffered.

In the course of Dr. Murphy's testimony, the ALJ observed that there were discrepancies between the doctor's medical notes and her opinion given at the hearing. For example, at the hearing Dr. Murphy twice stated that Burch entered Coastal Carolina Hospital in 1992 "as an emergency for suicidal ideation." A.R. 338, 340. The records from Coastal Carolina Hospital mention nothing about suicidal ideation, and on the discharge form Dr. Murphy observed that"[t]he patient's condition is stable and she is not [considered] to be potentially harmful to herself and/or others." A.R. 111. Explaining Burch's response to medication, Dr. Murphy testified that Burch "has had a very poor response to medication, and that's not her fault, it's her body." A.R. 348. However, Dr. Murphy's progress notes are replete with references to Burch, of her own volition, discontinuing medication. For example, in August 1995, an exasperated Dr. Murphy observed that "[a]s usual she has not given the medication adequate time to reach some degree of remission." A.R. 151. In the same vein, Dr. Murphy testified that alcohol consumption did not contribute to Burch's failure to recover. But Dr. Murphy's progress notes tell a different story. In December 1995, Dr. Murphy observed that Burch"is once again consuming some degree of alcohol and I have encouraged her to desist from alcohol intake as it is certainly not very beneficial for her level of depression and psychiatric functioning." A.R. 145. Answering a direct question from the ALJ, Dr. Murphy stated that "depression is causing the marital problems," rather than the marital discord causing the depression. A.R. 353. However, in notes written less than one year before the hearing, Dr. Murphy observed that Burch "feels that her primary problem is her relationship with her husband and I concur with her opinion." A.R. 148. In other notes, Dr. Murphy observed that the marital problems were "not really a medication issue but rather an issue of stress and power and control." A.R. 155. Interestingly, Dr. Murphy avers in her progress notes from January 1994 that there was "no evidence of biochemical depression" and that most of Burch's problems were "situational." A.R. 162.

6

In light of these and other discrepancies, the ALJ "attribute[d] very little credibility to Dr. Murphy's opinions with regard to the claimant's psychiatric impairments or limitations. She did concentrate almost solely on depression and she showed that the claimant's depression was situational in nature regarding her relationship to her family, predominantly her husband." A.R. 21-22. Normally, the treating physician's opinion is accorded controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (2000); see also Giving Controlling Weight to Treating Source Medical Opinions, 61 Fed. Reg. 34490, 34491-92 (1996). If not entitled to controlling weight, the value of the opinion must be weighed and the ALJ must consider:

> (1) the physician's length of treatment of the claimant,
>
> (2) the physician's frequency of examination,
>
> (3) the nature and extent of the treatment relationship,
>
> (4) the support of the physician's opinion afforded by the medical evidence of record,
>
> (5) the consistency of the opinion with the record as a whole; and
>
> (6) the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2). The ALJ's order indicates consideration of all the pertinent factors. First, the ALJ observed that Dr. Murphy began treating Burch in 1992 and that Burch was still under her care at the time of the hearing. Second, the ALJ made frequent reference to Dr. Murphy's progress notes which indicate Dr. Murphy saw Burch on a frequent basis. Third, ALJ noted "Dr. Murphy had a closer relationship with the claimant and the claimant's family than one would expect of a professional treating source." A.R. 21. Fourth, the ALJ observed that Dr. Murphy's opinion given at the hearing was not consistent with the medical records and especially her own progress

7

notes. Fifth, the ALJ documented and discussed at length the numerous inconsistencies between Dr. Murphy's opinion given at the hearing and her progress notes. Finally, the ALJ noted that Dr. Murphy's specialization was psychiatry.

We find no error in the ALJ's decision to accord Dr. Murphy's testimony little weight. The ALJ considered the relevant factors and found that the numerous inconsistencies rendered Dr. Murphy's testimony of little assistance. Indeed, in light of the material discrepancies between the records and testimony, there was no other realistic course for the ALJ to take. Moreover, the ALJ clearly stated why Dr. Murphy's opinion was entitled to little weight, and the ALJ exhaustively discussed the numerous inconsistencies that called Dr. Murphy's testimony into doubt. Accordingly, the ALJ's treatment of Dr. Murphy's opinion is in accord with the regulations and supported by substantial evidence in the record.

As stated earlier, a claimant has the burden of proving that she has a medically determinable mental or physical impairment that prevents her from engaging in substantial gainful activity. Burch called no other medical expert to testify, and the remaining evidence failed to make out a case for disability during the relevant time frame. Dr. Murphy's progress notes reveal that Burch frequently discontinued prescribed medication and that she continued to use alcohol despite Dr. Murphy's clear instructions. The regulations make clear that disability benefits are unavailable to a claimant who does not follow the prescribed treatment. See 20 C.F.R. § 404.1530(b) (2000) (stating that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled"). Moreover, the ALJ found that Burch's testimony established that she was able to care for her grandchild, drive on occasion, attend church, and engage in other activities. Based on our review of the record, we conclude that substantial evidence supports the ALJ's decision. With her treating physician's testimony properly accorded little weight, Burch failed to meet her burden and therefore the ALJ correctly denied disability benefits.

In attacking the ALJ's decision, Burch argues that the Commissioner failed to carry his burden on the fifth element of the sequential analysis to produce evidence that other jobs exist in the national economy that Burch can perform. We disagree. In this case, the fifth ele-

8

ment was never reached because Burch carried her burden on only the first two elements. Hence, the burden never shifted to the Commissioner.

Next, Burch contends that the ALJ ignored evidence indicating that she also suffers from neurological problems causing severe physical or exertional impairments in addition to depression. When first applying for benefits, Burch listed "depression" as her only disabling condition. Until now, Burch has consistently pursued benefits based on her depression. As a general rule, we will not consider issues raised for the first time on appeal. See, e.g., Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993). Because Burch's claim for benefits has always been based on her depression, we decline to consider this latest argument which was not raised below.

Finally, Burch alleges that the ALJ relied on the psychiatric report of a post-hearing medical examiner and that the ALJ refused to hold a supplemental hearing so that Burch's counsel could cross-examine the examiner. The examiner's report is not cited in the ALJ's opinion and the ALJ was careful to note that the report "is not being considered . . . in making this decision." A.R. 22. Accordingly, Burch's argument is without merit.

III.

For the foregoing reasons, we conclude that the denial of benefits in this case is supported by substantial evidence. Accordingly, the decision of the district court is hereby affirmed.

AFFIRMED

9